**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| RICO PAUL,<br><br>*Petitioner,*<br><br>v.<br><br>DAVID VANDERGRIFF,<br><br>*Respondent.* | Case No. 4:24-CV-00623-MAL |

# <u>ORDER</u>

Before the Court is Petitioner Rico Paul's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. For the reasons below, the petition is denied.

## Background

Willie Evans lived in his home with his wife, daughter, and an older gentleman named Harold Hotop who lived in the basement. Doc. 7-2 at 165. Paul Reiter was his neighbor. *Id.* at 40. Linda Allen and her husband Floyd lived behind the Evanses across an alley. *Id.* at 39–40, 102. On the morning of May 9, 2011, Mrs. Allen went to take her trash out to the alley and saw two black men on Mr. Evans' back porch, one tall and one short. *Id.* at 40–41, 64. Mrs. Allen thought this was odd because usually there were no people in the Evanses' yard. *Id.* at 41. After watching them for a few minutes, Mrs. Allen realized she had seen one of the men before—the taller man later identified as Petitioner Paul. *Id.* at 42. Mrs. Allen went back into her house, woke up her husband, and told him that she thought someone was trying to burglarize Evans's home. *Id.* Her husband said that she should call the police. *Id.* The Allens then heard a single gunshot. *Id.* at 42, 104. Mr. Allen said, "Come on. Let's go . . ." before they ran out their back door. *Id.* at 42. After coming back into her house, Mrs. Allen looked out her kitchen window and saw the taller of the two

men by the Evanses' gate. *Id.* at 43. The Allens then saw the taller man (Paul) take off running quickly down the alley. *Id.* at 45, 105, 107–08. About three or four minutes later, they saw the shorter, stockier man come out by the gate. *Id.* at 45, 109. The shorter man took off at a trot. *Id.* at 45–46, 109.

The Allens went over to the Evanses' house and knocked on the door, but no one answered. *Id.* at 46, 109. No one was home at the time except for the elderly Mr. Hotop who lived in the basement. *Id.* at 166. Mrs. Allen went home, and Mr. Allen went to work. *Id.* at 46. When Mr. Evans returned home later, his daughter told him that a window in their house had been broken. *Id.* at 168–69. Mr. Evans and Mr. Hotop found that a window near the Evanses' back porch had been broken. *Id.* at 169. While they were out on the back porch looking around, Mrs. Allen came over to talk to Mr. Evans. *Id.* at 47, 169. Mrs. Allen told Mr. Evans that two men had been on his back porch, and she thought that they had intended to burglarize his home. *Id.* at 48. Mr. Evans called the police. *Id.* at 169.

Later that day, Mr. Evans was on his back porch fixing his window. *Id.* 171. He saw his neighbor, Paul Reiter, lying face down in his back yard. *Id.* at 171–72. Mr. Evans went over to check on him, found that he was already dead and called 911. *Id.* at 172. Detective Joseph Lankford responded to the scene. *Id.* at 182–83. Mr. Reiter was lying dead in his back yard. *Id.* at 183–84. He had a cell phone in his hand, and the number 911 had been entered in the phone. *Id.* at 186.

Inside a blue recycling dumpster behind Mr. Evans's home, law enforcement officers found a pair of latex gloves and a t-shirt. *Id.* at 188. Law enforcement located Arlando Quarles, a known burglar in the area. *Id.* at 202–04; Doc. 7-3 at 57. In a videotaped statement,[1] Quarles told law enforcement about his relationship and conversations with Rico Paul. Doc. 7-3 at 26–28. Quarles was a longtime acquaintance

[1] The Court attempted to locate a copy of the videotaped statement but was unable to do so. Quarles was provided ample opportunity to submit a copy of the videotaped statements, but did no do so. All of the Court's knowledge about the contents of the videotaped statement comes from Respondent's briefing, including the trial transcript. *See, e.g.*, Doc. 7-3 at 25–27. All citations regarding any videotaped statements are to the trial transcript and Respondent's briefing.

of Paul. *Id.* at 9. On the day of Mr. Reiter's murder, Paul came over to Quarles' home and asked Quarles to hold a gun for him. *Id.* at 59. The gun was a black .380 that Quarles had seen Paul with many times. Doc. 7-6 at 13; Doc. 1-2 at 91. Quarles told Paul that Quarles could not hold the gun and that Paul had to leave. Doc. 7-7 at 8. Quarles informed law enforcement that Paul told Quarles that Paul was in the Evanses backyard when he saw a man who asked him what he was doing and threatened to call the police. *Id.* Paul then told Quarles that Paul shot the man in the face because Paul couldn't afford to go back to jail, and that "shit went bad" so he "had to ice the dude." Doc. 7-6 at 13; Doc. 7-7 at 8.

After speaking with Quarles, officers picked up Paul for questioning. Doc. 7-3 at 63. In a videotaped interview with Detectives Daniel Sweeney and Daniel Fox, Paul confessed to shooting Mr. Reiter. Doc. 1-2 at 20, 38,

Here is Paul's first story that he told the detectives. Everything that follows is from an interview of Paul by police, a recording of which was admitted as State's Exhibit 52 and played for the jury at trial. The content of that recording is recounted here from the State's briefing. Doc. 7-2 at 21; Doc. 7-3 at 31–32. Paul was asleep in a car on the morning of the murder when his friend, Demetrius Ward, came and woke him up. Doc. 7-7 at 20. The two of them "smoked blunts" until mid-morning when he called his "PO." *Id.* The officers told Paul that he had been identified as being at the scene of the murder, so Paul told a different story.

In version two, Paul was on a "mission" to get into people's houses, so he called Devin Jackson, told him that Paul did not have any money, and asked Jackson if he wanted to go on a "mission" to get a flat screen television. *Id.* at 9. Paul and Jackson met up on the morning of the murder and started checking out houses and knocking on doors to see if anyone was home. *Id.* While he was knocking at the Evanses' door, he heard Jackson break out a window in the back of the house and heard someone say, "Hey, what're you doing? I'm gonna call the police." *Id.* After that, he heard a gunshot, so he ran. *Id.* He also told police that he thought Jackson had a black .380

gun. *Id.* The detective told Paul that he did not believe that he was being completely honest, so Paul's story changed again. *Id.*

Here is version three. Jackson actually had nothing to do with it. *Id.* Rather, Paul and a girl were "on a mission." *Id.* The girl knocked on the front door while he went to the back door. *Id.* at 9–10. The girl followed. *Id.* at 10. Then, the girl broke out a window with a glass ashtray. *Id.* He was looking through the back window into the house when the next-door neighbor came out in his yard and asked them, "What the f*** are you guys doing?" *Id.* Paul saw something black in the man's hand and assumed the man had a gun. *Id.* He shot the man and ran. *Id.*

Mrs. Allen later picked Paul out of lineup as the taller man she saw running down the alley. Doc. 7-2 at 53–54; Doc. 7-3 at 72–73. Mrs. Allen was "a hundred percent sure" it was him. Doc. 7-2 at 54. Mr. Allen also picked Paul out of a lineup. *Id.* at 113–15; Doc. 7-3 at 70, 72.

The autopsy of Mr. Reiter's body revealed a single gunshot wound. Doc. 7-3 at 96. The bullet entered the upper left side of his abdomen and tracked towards his pelvis, from the left side of his body to the right side of his body, and from the front toward the back. *Id.* at 97–98. The bullet severed his right iliac vessel in his leg. *Id.* at 98. It would have taken minutes for Mr. Reiter to bleed out. *Id.* at 99.

After a jury trial, Paul was convicted of first-degree murder, armed criminal action, and attempted first-degree burglary. *Id.* at 205; Doc. 7-4 at 14, 116–17, 123–26. The trial court sentenced Paul as a prior offender to life-without-parole for murder, twenty years for armed criminal action, and seven years for attempted burglary. Doc. 7-3 at 216; Doc. 7-4 at 15, 123–26. All sentences run concurrently. Doc. 7-3 at 216; Doc. 7-4 at 123–26. The court of appeals affirmed the trial court on direct appeal, where Paul raised points relating to the trial court's admission of (1) the portion of Quarles's videotaped statement where Paul told him he could not go back to jail, (2) the portion of Paul's confession where he mentioned calling his "P.O.," and (3) the sufficiency of the evidence on the first-degree burglary charge. *State v. Paul*, 489 S.W.3d 842 (Mo. App. 2015); *State, v. Paul*, 2014 WL 7211185, at *19–21. Paul then filed a motion under Missouri Supreme Court Rule 29.15 for post-conviction relief in

Missouri trial court. Doc. 7-12 at 11–27 (*pro se* motion), 33–59 (amended motion); Doc. 7-11 (motion hearing). After an evidentiary hearing, that court entered a judgment denying post-conviction relief. Doc. 7-12 at 119–132. Paul appealed the judgment denying post-conviction relief, but the court of appeals affirmed the Missouri trial court. *Paul v. State*, 652 S.W.3d 389 (Mo. App. 2022). Paul also filed a state habeas petition, which was dismissed. Doc. 7-22. Paul then filed this petition for federal habeas relief on May 3, 2024. Doc. 1.

Paul serves his sentences in the Potosi Correctional Center in Washington County, Missouri, where Respondent David Vandergriff is the warden. Doc. 7 at 1.

**Petitioner's Claims**

Paul raises several claims in fifteen separate grounds in the habeas petition before the Court:

**Ground 1:** Paul alleges there was a Confrontation Clause violation at his trial because Mr. Hotop, the elderly man who was in the house at the time Paul tried to burgle it, did not testify at trial. Doc.1 at 4–6. Paul also alleges that the evidence was insufficient on the attempted-burglary count because Mr. Hotop did not testify. *Id.*

**Ground 2:** Paul alleges the trial court erred in admitting part of a videotaped statement by a witness where the witness said that Paul told the witness that Paul shot the victim because he did not want to go back to jail. Doc. 1 at 7–9.

**Ground 3:** Paul alleges that a portion of his statement where he referred to his "PO" should have been excluded. Doc. 1 at 13.

**Ground 4:** Paul alleges that the trial court abused its discretion by failing to exclude his entire statement to the police and failing to exclude testimony about the making of the statement. Doc. 1 at 20.

**Ground 5:** Paul alleges that he was not read his *Miranda* rights before he gave a statement to a detective. Doc. 1 at 25.

**Ground 6:** Paul alleges he never understood his *Miranda* rights and never said that he understood them. Doc. 1 at 27.

**Ground 7:** Paul alleges that he was denied effective assistance of counsel because a picture of his friend holding a black and silver gun was never used at trial. Doc. 1 at 33.

**Ground 8:** Paul alleges that the State failed to meet all the elements of first-degree murder because if he had not struck the victim's artery, the victim would not have died. Doc. 1 at 35.

**Ground 9:** Paul alleges that the indictment was defective because it listed first-degree murder as count one, but in his view, attempted burglary should have come first because he attempted to burgle the home before murdering Mr. Reiter. Doc. 1 at 40.

**Gound 10:** Paul alleges his trial counsel was ineffective because a witness said "colored" instead of "black" during a deposition, and his counsel did not mention that at trial. Doc. 1 at 44.

**Ground 11:** Paul alleges his post-conviction counsel was ineffective for advising Paul to file a federal habeas petition before a state habeas petition. Doc. 1 at 48.

**Ground 12:** Paul alleges that his trial counsel was ineffective for not calling a witness Paul says previously lived at the home he attempted to burgle and who Paul alleges knew that he was familiar with the home, having been there many times. Doc. 1 at 53.

**Ground 13:** Paul alleges his trial counsel was ineffective for not deposing two witnesses before trial on the grounds that Paul believes that if they had been deposed, he might have been more open to accepting a plea agreement. Doc. 1 at 57.

**Ground 14:** Paul alleges that the state habeas court abused its discretion by not entering a default judgment when the initial response to the show-cause order did not address grounds twelve and thirteen in his state habeas petition. Doc. 1 at 61.

**Ground 15:** Paul alleges that he was ineligible to be sentenced to life without parole because he was eighteen years old at the time of the crime. Doc. 1 at 63.

## Legal Standards

The proper standard of review for habeas relief depends on whether the ground for relief was adjudicated on the merits in state court proceedings or procedurally barred from being reviewed at all. *See Cone v. Bell*, 556 U.S. 449, 465–66 (2009). The specific standard for ineffective assistance of counsel claims also deserves special attention.

### A. The Adjudicated-on-the-Merits Standard

When a claim has been adjudicated on the merits in state court proceedings, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, permits habeas relief, though such relief is "limited and deferential." *Lomholt v. Iowa*, 327 F.3d 748, 751–52 (8th Cir. 2003). In such circumstances, relief is permissible only if the state court's determination:

> (1) [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). A state court's decision is "contrary to" clearly established Federal law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005).

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," *id.*, or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). When reviewing whether a state court decision involves an "unreasonable determination of facts," state court

findings of "basic, primary, or historical facts" are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. *Collier v. Norris*, 485 F.3d 415, 422–23 (8th Cir. 2007) (citations omitted); 28 U.S.C. § 2254(e)(1).

Importantly, federal habeas review exists only "as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)). By limiting federal habeas review of state court decisions, AEDPA aims "to prevent federal habeas retrials and to ensure state-court convictions are given effect to the extent possible under the law." *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (citing *Colvin v. Taylor*, 324 F.3d 583, 586 (8th Cir. 2003)).

### B. The Standard for Ineffective Assistance of Counsel Claims

The specific standard for ineffective assistance of counsel claims deserves special mention, as they are both commonly asserted and commonly misunderstood by habeas petitioners. To prevail on his ineffective assistance of counsel claims, Paul must show that his attorney's performance fell below an objective standard of reasonableness and that it prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688–92 (1984). With respect to attorney performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. With respect to prejudice, a petitioner must show "that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility, Warden*, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)). First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result

would have been different absent the errors. 466 U.S. at 696. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Under AEDPA, federal courts must then give substantial deference to the state court's judgment.

So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of §2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. *Id.* at 100–01 (internal quotations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 105. Lastly, a state court's findings of fact, made while deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

**C. The Procedural-Default Standard**

A claim is not eligible for federal habeas review unless the petitioner fairly presented the claim to state courts during direct appeal or in a post-conviction proceeding. *Sweet v. Delo*, 125 F.3d 1144, 1149, 1153 (8th Cir. 1997). A petitioner who fails "to follow applicable state procedural rules [for] raising the claims . . . is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." *Id.* at 1151 (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991) (internal quotation marks omitted). However, a procedurally barred ground may be reviewed on the merits if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage,

infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

Finally, to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## Discussion

Paul asserts several claims in fifteen separate grounds in his petition. Starting with the claims that are procedurally barred, the Court addresses each claim (grouped together when applicable) before moving on to the claims that are not cognizable under § 2254, and then, finally, the claims eligible to be reviewed on the merits.

### A. The Procedurally Defaulted Claims

The Court first addresses Paul's claims that were procedurally defaulted. The procedural default doctrine is "grounded in concerns of comity and federalism," *Coleman v. Thompson*, 501 U.S. 722, 730 (1991), and applies whether the default occurred at trial, on appeal, or on state collateral attack, *Murray v. Carrier*, 477 U.S. 478, 490–492 (1986). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

Therefore, "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750. Here, Paul makes no attempt to avail himself of the "fundamental miscarriage of justice" exception. Thus, the Court applies the

standard procedural-default doctrine to all of Paul's claims not properly presented to state courts prior to bringing this habeas petition.

**a. Grounds Four, Five, Six, Seven, Eight, and Nine**

In Grounds Four, Five, Six, Seven, Eight, and Nine, Paul alleges the trial court made various errors. But each of these claims must be denied because they are procedurally defaulted, and Paul has made no showing of cause that excuses the procedural default, much less prejudice.

These claims were all procedurally defaulted because Paul did not raise them on direct appeal, which Paul acknowledges. *See* Doc. 1 at 20 (Ground Four), 25 (Ground 5), 29 (Ground Six), 35 (Grounds Seven and Eight), 40 (Ground Nine). Missouri courts require trial errors, including constitutional claims of trial error, to be raised on direct appeal. *State v. Clark*, 859 S.W.2d 782, 789 (Mo. App. 1993). Claims that could have been raised on direct appeal, but were not, are procedurally defaulted. *Skillicorn v. Luebbers*, 475 F.3d 965, 976 (8th Cir. 2007). Because Paul could have raised these claims on direct appeal but failed to do so, they were procedurally defaulted. *Id*. Therefore, these claims cannot be reviewed on the merits absent a showing of cause and prejudice. *Coleman*, 501 U.S. at 745.

For Grounds Four, Five, Six, Eight, and Nine,[2] Paul says these issues were not raised in his direct appeal because his attorney denied his request to raise them. Doc. 1 at 20, 25, 29, 35, 40. But this is not "cause" to excuse the procedural default. Ineffective assistance of counsel *may* be cause to excuse procedural default only if the petitioner properly raised ineffective assistance of counsel in appropriate state court proceedings. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("'[A] claim of ineffective assistance,' . . . generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'") (quoting *Murray v. Carrier*, 477 U.S. 477, 489 (1986)). In Missouri, claims of ineffective assistance of trial or appellate counsel must be brought through a post-conviction relief motion under Missouri Supreme Court Rule 29.15. *See State v. Gray*, 887

[2] Paul does not offer an excuse for why Ground Seven was not raised on direct appeal.

S.W.2d 369, 386 (Mo. 1994) (denying ineffective assistance of counsel claim because it was not raised in initial motion under Rule 29.15). An ineffective-assistance-of-counsel claim is procedurally defaulted if a petitioner fails to raise it in a post-conviction-relief motion or on appeal from the denial of such a motion. *See Interiano v. Dormire*, 471 F.3d 854, 856 (8th Cir. 2006) (applying the rule to an ineffective-assistance-of-counsel claim).

Here, Paul never argued in post-conviction proceedings that his direct-appeal counsel was ineffective for not raising Grounds Four, Five, Six, Seven, Eight, and Nine.[3] Thus, his claim that direct-appeal counsel was ineffective on this basis is procedurally defaulted and cannot be "cause" to excuse procedural default of Grounds Four, Five, Six, Seven, Eight, and Nine, which he failed to raise on direct appeal. *See, e.g., Fields v. Roper*, 448 F. Supp. 2d 1113, 1117 (E.D. Mo. 2006).

To the extent Paul argues that his post-conviction counsel was ineffective for failing to argue that Paul's direct-appeal counsel provided ineffective assistance, this argument also fails to excuse the procedural default of these claims. "In *Coleman v. Thompson*, the Supreme Court held that because there is no Sixth Amendment right to postconviction counsel, ineffective assistance of postconviction counsel generally does not constitute cause for procedural default." *Dorsey v. Vandergriff*, 30 F.4th 752, 755 (8th Cir. 2022) (citing *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). This is not the case if postconviction counsel missed a "substantial" claim of ineffective assistance of ***trial*** counsel, *see Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Dorsey*, 30 F.4th at 755–56, but the same is not true for claims of ineffective assistance of ***appellate*** counsel. These claims cannot excuse procedural default. *Dansby v. Hobbs*, 766 F.3d

[3] Paul does not even appear to claim that direct-appeal counsel was ineffective in his initial *pro se* motion for post-conviction relief. Even if he had, it would not matter. Claims in a *pro se* motion for post-conviction relief but not included in an amended motion by appointed counsel and in any appeal from denial of that motion, are procedurally defaulted. *See Interiano*, 471 F.3d at 856–57 (defaulting the same); *see also Wills v. State*, 321 S.W.3d 375, 386–87 (Mo. App. 2010) (under Missouri law, claims included in *pro se* motion for post-conviction relief but not in subsequent amended motion are "not properly before the motion court because they are a nullity").

809, 833 (8th Cir. 2014).[4] Therefore, Paul cannot claim that ineffective assistance of postconviction-relief counsel *excuses* the procedural default of a claim that his direct-appeal counsel failed to raise alleged trial-court errors on appeal. Such a claim remains procedurally defaulted and cannot excuse the procedural default of the underlying claims of trial-court error. *See Edwards v. Carpenter,* 529 U.S. 446, 450–51 ("a procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself."). Thus, the claims Paul raises in Grounds Four, Five, Six, Seven, Eight, and Nine remain procedurally defaulted despite Paul's threadbare assertions of appellate- and postconviction-counsel error.

Paul's assertion that he raised these claims in his state habeas petition does not change this analysis. *See* Doc. 1 at 19 (Ground Four), 29 (Ground Five), 30 (Ground Six), 35 (Ground Seven), 40 (Ground Eight), 41 (Ground Nine). In Missouri, state habeas petitions are "'not a substitute for appeal or post-conviction proceedings.'" *State ex rel. Bailey v. Horsman*, 700 S.W.3d 1, 22 (Mo. Ct. App. 2024) (quoting *State ex rel. Simmons v. White*, 866 S.W.2d 443, 446 (Mo. 1993)). Thus, these claims were procedurally defaulted when he failed to raise it in his direct appeal. And because Paul has failed to show cause to excuse that procedural default, the claims in Grounds Four, Five, Six, Seven, Eight, and Nine are all procedurally barred from federal habeas review. The claims are denied accordingly.

---

[4] In *Martinez v. Ryan*, the Supreme Court carved out a narrow exception to the *Coleman* rule, holding that errors by post-conviction counsel may, in some circumstances, be "cause" to excuse procedural default of claims of ineffective assistance of *trial counsel.* 566 U.S. 1, 9 (2012). But that case is inapplicable here because Paul's allegations are about ineffective assistance of ***direct appeal counsel***, not ***trial counsel***. Doc. 1 at 20, 24, 39.; *see Dansby*, 766 F.3d at 833.

**b. Grounds Ten and Twelve**

In Grounds Ten and Twelve, Paul alleges ineffective assistance of trial counsel. Warden Vandergriff argues that these claims are also procedurally barred. The Court agrees.

Paul seems to believe that these two claims are not procedurally defaulted because he raised them in his post-conviction-relief motion. Doc. 1 at 45 (Ground Ten), 56 (Ground Twelve). But they were not included in his *amended* motion for post-conviction relief, Doc. 7-12 at 33–59, or in the appeal from the denial of that motion, Doc. 7-14. A petitioner's claims are "procedurally defaulted [where]," as here, "none of the claims were presented in his [Missouri] Court Rule 29.15 motion or included in his appeal" from denial of that motion). *Interiano*, 471 F.3d at 856–57 (holding that claims included in a defendant's *pro se* Rule 29.15 motion—but not included in the defendant's amended Rule 29.15 motion filed by post-conviction relief counsel or in his appeal from the denial of his amended motion—were procedurally defaulted). Thus, these claims are procedurally defaulted. *Id.*

No "cause" excuses this procedural default. Paul's only explanation is that "[his] [post-conviction-relief] attorney disregarded [his] request" to include these claims. Doc. 1 at 45, 56. But that comes nowhere near the type of "cause" that excuses procedural default.

"Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding," as is the case here with Missouri's law,[5] "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral

[5] *See* Mo. Sup. Ct. Rule 29.15(a), (b) ("A person convicted of a felony after trial claiming that the conviction or sentence…violates the…constitution of the United States, including claims of ineffective assistance of trial and appellate counsel…may seek relief in the sentencing court… no earlier than the date the sentence is entered if no appeal is taken…, or the date the mandate of the appellate court issues affirming the judgment or sentence."); *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) ("Missouri law does not allow a claim for ineffective assistance of counsel to be raised on direct appeal.") (citation omitted).

proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17. That is not the case here. Paul had effective counsel during his postconviction relief proceedings (*i.e.,* his "initial-review collateral proceeding").

To show otherwise, Paul must show that his post-conviction relief counsel was "ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 . . . (1984)," *Martinez*, 566 U.S. at 14. Under *Strickland*, Paul must show that (1) "[his] counsel's performance was deficient," and (2) "the deficient performance prejudiced [his] defense." 466 U.S. at 687; *see also Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014). The deficient-performance prong requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," and Paul bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" that "might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Even if true, Paul's post-conviction relief counsel declining his request to raise some minor claims in post-conviction relief proceedings does not overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable processional assistance. As the Eighth Circuit has explained:

> When appellate counsel competently asserts some claims on defendant's behalf, it is difficult to sustain a[n] ineffective assistance of claim based on allegations that counsel was deficient for failing to assert some other claims. Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

*Link v. Luebbers*, 469 F.3d 1197, 1205 (8th Cir. 2006) (quotation and citations omitted). The same logic applies to claims of ineffective assistance of post-conviction relief counsel collaterally attacking a conviction.

Here, Paul's post-conviction relief counsel raised multiple claims of ineffective assistance of trial counsel in the amended post-conviction relief motion and in the appeal from the denial of that motion. Those claims asserted that Paul's trial counsel was ineffective for presenting an alibi defense when self-defense was much more plausible, failing to impeach a witness about the witness' prior statement that he had never handled a gun, and not offering into evidence a photograph of the witness posturing with a gun. Doc. 7-14 at 24–25. The claims Paul says his post-conviction-relief counsel disregarded are not clearly stronger than the claims post-conviction-relief counsel made. The claims post-conviction-relief counsel raised, if successful, could have asserted a defense—either that Paul shooting the victim was justified or that someone else was the shooter. Putting aside the logical conflict between these approaches, they at least potentially could have established a defense. The claims Paul says were disregarded by his post-conviction-relief counsel could not have established a defense. His claim in Ground Ten was about the bias of one witness who had identified Paul as the shooter, but there were other witnesses who also identified Paul as the shooter. Thus, it was unlikely that the alleged bias of one witness would have changed the result. Paul's claim in Ground Twelve was about failing to subpoena a witness—Mr. Page. But this probably would have been *unhelpful* to Paul, because the only thing Paul says he wanted Mr. Page to testify about was how Paul was familiar with the home that he attempted to break into before shooting and killing Mr. Reiter. In light of that, Paul's post-conviction-relief counsel's decision to not raise every conceivable claim and focus on the most viable ones "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Therefore, Paul has failed to show "cause" to excuse the procedural default of the underlying alleged ineffective-assistance-of-trial-counsel claims in Grounds Ten and Twelve of his petition. Accordingly, the Court denies these claims.

**c. Ground 13**

Paul's claim in Ground Thirteen fails for the same reason as Grounds Ten and Twelve. In Ground Thirteen, Paul asserts a claim of ineffective assistance by his trial counsel. Doc. 1 at 57–61. This time, he complains that trial counsel noticed depositions of two witnesses but never completed them. Paul says that if he had known about these depositions, and if they had been completed, he would have been more open to taking a plea agreement (though he does not explain why). *Id.* at 57.

Paul never raised this claim—specifically this legal argument—in his Missouri Court Rule 29.15 post-conviction-relief motion. *See generally* Doc. 7-12. As such, it is procedurally defaulted. *See Interiano*, 471 F.3d at 856 (a "federal habeas petitioner's claims must rely on the same factual and legal bases relied on in state court."). His excuse for failing to raise it in post-conviction-relief proceedings is that he claims not to have known about trial counsel's actions until post-conviction-relief counsel sent Paul his legal file after denial and conclusion of Paul's appeal of the motion for post-conviction relief. Doc. 1 at 57.

Because Paul's post-conviction-relief counsel knew about the facts giving rise to Paul's claim, the claim could have been raised in post-conviction-relief proceedings, but it was not. Post-conviction-relief counsel does not become ineffective simply because he fails to make every conceivable argument. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Luebbers*, 469 F.3d at 1205 (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000). This claim is not clearly stronger than the other arguments presented by post-conviction-relief counsel. It is not even clear what Paul's claim actually is. He complains that two people should have been deposed prior to his trial, and that if they had been, he might have been more open to a plea agreement. Doc. 1 at 57. It is hard to take that argument seriously without any explanation about why it would have changed Paul's decision to go to trial. Paul might regret going to trial now, but that is not a cognizable ground to grant him habeas relief.

And again, in his own words, Paul's claim in Ground Thirteen is that, maybe, Paul would have preferred to plead guilty rather than proceed to trial. So even if the depositions that Paul complains about were completed, he still would have been convicted of the offenses charged—just earlier in the process. That is not a viable claim of ineffective assistance of trial counsel, and certainly is not clearly stronger than the claims that Paul's post-conviction-relief counsel ended up raising. In light of this, Paul's post-conviction-relief counsel's decision to focus on the most viable claims (and not Ground 13) "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Therefore, Paul has failed to show cause to excuse the procedural default of the underlying ineffective-assistance-of-trial-counsel claims in Ground Thirteen of his petition. The Court denies this claim.

## B. Claims Not Proper for Federal Habeas Review

Some of Paul's claims are fundamentally flawed because they allege violations that a federal habeas court has no authority to redress. The Court will deny Paul's claims in Grounds Eleven, Fourteen, and Fifteen of his petition on this basis.

### a. Ground Eleven

In Ground Eleven, Paul alleges that post-conviction appellate counsel was ineffective by advising him to file a federal habeas petition before filing a state habeas petition to avoid blowing the strict federal habeas filing deadline. Doc. 1 at 50. This is not a proper ground for relief. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding under section 2254." 28 U.S.C. § 2254(i). The Court denies Paul's claim in Ground Eleven of his petition.

### b. Gound Fourteen

In Ground Fourteen, Paul alleges that the state habeas court abused its discretion by not entering a default judgment after the State's initial response to the state habeas court's show cause order did not address some of the grounds raised in Paul's state habeas petition. Doc. 1 at 61. This claim also is not a proper ground for relief. "[A]n infirmity in a state post-conviction proceeding does not raise a

constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351–52 (8th Cir. 1997) (quoting *Jolly v. Gammon,* 28 F.3d 51, 54 (8th Cir. 1994)). The Court denies Paul's claim in Ground Fourteen of his petition.

**c. Ground Fifteen**

In Ground Fifteen, Paul claims that he was barred from being sentenced to life without parole because, according to him, Missouri prohibits those eighteen years old and younger from being sentenced to life without the possibility of parole. Thus, he argues, his sentence violated his rights under the Missouri Constitution. Doc. 1 at 63. Again, this claim fails.

To start, the Court cannot review this claim because it is based on an alleged violation of Missouri state law. Doc. 1 at 63 (alleging a violation of the Missouri Constitution). AEDPA allows federal courts to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court ***only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."*** 28 U.S.C. § 2254(a) (emphasis added). Federal habeas review only concerns violations of federal law. AEDPA—and long-standing principles of comity and federalism—leave federal courts powerless to grant habeas relief based on a state court's alleged violation of its own state laws. Paul alleges he raised this claim in his state habeas proceeding, which the state court denied. Doc. 1 at 66. This Court cannot, and will not, revisit that determination of state law.

To the extent that Paul is attempting to assert the federal-law claim that the Eighth and Fourteenth Amendments prohibit a State from imposing a mandatory life-without-parole sentence on juveniles under *Miller v. Alabama*, 567 U.S. 460, 465 (2012), that claim also fails. "*Miller* held that the Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits ***mandatory*** life-without-parole sentences for murderers under 18, but the Court allowed ***discretionary*** life-without-parole sentences for those offenders." *Jones v. Mississippi*, 593 U.S. 98, 103 (2021) (emphasis in original). Paul has no claim under *Miller v. Alabama* because he was not under eighteen at the time of the crime, *see* Doc. 1 at 63 (alleging that he was eighteen years

old at the time of the crime), and he has failed to show that his life-without-parole sentence was mandatory rather than discretionary. The Court denies Paul's claims in Ground Fifteen of his petition.

**C. Other Claims.**

**a. Ground One**

In Ground One of his petition, Paul alleges that the trial court erred in denying his motion for judgment of acquittal at the close of the evidence on the attempted-first-degree-burglary count. Doc. 1 at 6. Specifically, Paul asserts that: (A) the evidence was insufficient to support his conviction because the State needed to demonstrate that there was a person in the home at the time of the burglary, and the elderly man allegedly in the home at the time of the burglary did not testify at trial and (B) the elderly man not testifying at trial violated the U.S. Constitution's Sixth Amendment Confrontation Clause. *Id.* Both claims fail.

The Court construes Paul's complaint about the sufficiency of the evidence as attempting to assert a violation of the right to be convicted only upon proof of guilt beyond a reasonable doubt. U.S. Const. amends. V, XIV. Because the Missouri Court of Appeals previously adjudicated this claim, Paul must show that the Missouri Court of Appeals' decision was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). He has shown neither.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). This constitutional guarantee is violated only if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

The Missouri Court of Appeals reasonably applied this standard in affirming Paul's conviction and rejecting his challenge to the sufficiency of the evidence on the

attempted-first-degree-burglary count. As the Missouri Court of Appeals noted, there was evidence of a person in the home at the time of the burglary because the State presented evidence that: the elderly man was in the home when the homeowner left, the elderly man was in the home when the homeowner returned, and the elderly man did not leave the home without the homeowner's aid. Based on that evidence, the Missouri Court of Appeals held that "a reasonable finder of fact could infer that [the elderly man] was, in fact, home when [Paul] attempted to enter the house." Doc. 7-8 at 9. This Court agrees. The Missouri Court of Appeals' rejection of this claim was not "an unreasonable application," of *Jackson*, and it was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d)(1) and (2). Therefore, the Court denies this portion of Paul's claim in Ground One of his petition. *See* 28 U.S.C. § 2254(d).

This Court also denies Paul's Confrontation Clause claim. Despite Paul's allegation that he raised this claim during his direct appeal, there is no evidence of that, so the claim is procedurally defaulted. Paul does not allege anything that might constitute cause to excuse the procedural default. *See generally* Doc. 1 at 1–6. Thus, this claim is procedurally barred from federal habeas review. *See Skillicorn*, 475 F.3d at 976 ("Claims that have not been presented to the state courts, and for which there are no remaining state remedies, are procedurally defaulted.").

The claim is also meritless. The Confrontation Clause prevents the admission of out-of-court testimonial statements by witnesses who do not testify at trial. *See Crawford v. Washington*, 541 U.S. 36, 68–69 (2004). No out-of-court testimonial statement by the elderly man, Mr. Hotop, was admitted at trial, so the Confrontation Clause is not implicated. Accordingly, the Court denies all claims in Ground One of Paul's petition.

**b. Grounds Two and Three**

In Ground Two of his petition, Paul alleges that the trial court erred in overruling his objection and admitting the portion of a witness' videotaped statement in which the witness stated that Paul told him that he shot the victim because he did not want to go back to jail. Doc. 1 at 10. In Ground Three of his petition, Paul alleges

that the trial court erred in overruling his objection and admitting the portion of his videotaped confession where he mentioned calling his "P.O." (probation officer). Doc. 1 at 13–14. Paul argues that these statements were both improper evidence of other crimes, and therefore, their prejudicial value outweighed their probative value in violation of his right under the Fourteenth Amendment's Due Process Clause to be tried only for the offenses with which he was charged. Doc. 1 at 12, 15. The Court denies these claims.

The Missouri Court of Appeals previously adjudicated and rejected both claims. Regarding the witness's statement that Paul said he shot the victim because he did not want to go back to jail, the Missouri Court of Appeals found that even though the statement conceivably referenced crimes not charged in the case, it was properly admitted under Missouri law to establish motive and to present a complete portrait of the events surrounding the murder. Doc. 7-8 at 5–6. As for the statement where Paul mentioned calling his "P.O.," the Missouri Court of Appeals found that it was vague, indefinite, and did not refer to any specific crime, and therefore that it could not constitute inadmissible evidence referencing prior bad acts or other crimes under Missouri law. *Id.* at 8. The court also found that the "P.O." statement was too intertwined with the rest of Paul's confession to be redacted, and necessary to provide a complete and coherent picture of the events leading up to the crime. *Id.* Therefore, the Missouri Court of Appeals held that the trial court did not err in admitting either statement.

The Missouri Court of Appeal's interpretation and application of Missouri law as to both claims cannot be reexamined now. "[I]n a § 2254 habeas corpus proceeding, a federal court's review of alleged due process violations stemming from a state court conviction is narrow." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995). "A federal court may not re-examine a state court's interpretation and application of state law." *Skillicorn*, 475 F.3d at 974 (citation omitted). A state court evidentiary ruling will only be reversed "if the petitioner ... show[s] that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair. To carry that burden, the petitioner must show that there is a

reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different." *Goeke*, 44 F.3d at 679 (internal quotations and citations omitted).

Paul fails to show how the trial court's admission of either statement violated his federal due process rights, much less show a reasonable probability that their admission affected the outcome of the trial. Multiple witnesses identified Paul as the shooter, and Paul himself confessed to shooting Mr. Reiter. Doc. 7-2 at 53–54; Doc. 7-3 at 72–73; Doc. 7-2 at 255; Doc. 7-2 at 113–15; Doc. 7-3 at 70, 72. There is not a reasonable probability that the exclusion of either statement's vague reference to prior offenses could have affected the outcome of his trial amidst this overwhelming evidence of his guilt. Thus, even if the Missouri Court of Appeal's adjudication of these claims was contrary to or involved an unreasonable application of clearly established federal law, this would not be a basis to reverse the conviction. *Goeke*, 44 F.3d at 679. The Court denies Paul's claims in Grounds Two and Three of his petition.

## Conclusion

**IT IS HEREBY ORDERED** that Paul's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability because Paul has not made a substantial showing of the denial of a federal constitutional right.

**SO ORDERED,**

This 27th day of October, 2026.

Maria A. Lanahan

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE